United States Courts
Southern District of Texas
F I L E D

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

JUN 2 3 2023

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| In Re: SOKONA DIALLO<br>*Debtor* | CHAPTER 7<br><br>Case No. 22-33351 |
| AMADOU WANE<br>*Plaintiff*<br><br>SOKONA DIALLO<br>*Defendant* | Adv. Pro. No._____ |

## COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF CERTAIN DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2), AND (6)

Plaintiff Amadou Wane ("Wane"), pursuant to 11 U.S.C. §§ 523(a)(2), and (6) and Rules 4007 and 7001 of the Federal Rules of Bankruptcy Procedure, hereby files this Complaint requesting that the Court determines that certain debt and obligations owed by Debtor/Defendant Sokona Diallo ("Diallo" or the "Debtor") to Plaintiff are nondischargeable. In support of this Complaint, Wane respectfully states as follows:

### I.    JURISDICTION

1.  On November 9, 2022 (the "Petition Date"), Diallo filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "Bankruptcy Code"). On January 6, 2023, she converted her case to a Chapter 7 case.

1

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and this matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

3. Venue is appropriate in this Court in accordance with 28 U.S.C. § 1409(a).

4. Mr. Wane is a creditor of Ms. Diallo. *See* Claim No. 4 filed in the main proceedings on November 25, 2022.

5. Diallo is a married individual and debtor in these proceedings.

## II.   **INTRODUCTION**

6. The underlying judgment debt was the consequence of Diallo's sophisticated fraud. In order to win the plaintiff's trust, Sokona Diallo engaged in a romance scam in which she displayed romantic feelings for Plaintiff. After winning plaintiff's trust, she used a variety of tricks to steal his money, including suggesting a fictitious business partnership, fabricating a serious sickness, fabricating a pregnancy, and impersonating a number of people, including an attorney and a federal agent. Diallo made false statements and made up fictitious personas to promote her scam in order to carry out and attempt to carry out the above-described scheme. Sokona Diallo is a skilled con artist who has no problem abusing the trust of those in her vicinity. She uses call spoofing software to impersonate different people in order to further mislead her victims. Under her innocent exterior hides a devious liar obsessed with money and material possessions. She has no qualms about using any trick to further her antics.

7. After earning the trust of the Plaintiff, Diallo approached him in August 2017 with a business deal involving the shipment of iron ore mineral from her native country of Mali (West Africa). Plaintiff provided her more than $300,000 over the course of nearly two years as seed money for what he believed to be a legitimate business enterprise.

8. Diallo misled the plaintiff using a complex web of deceptions and frauds. She used the cash to buy and rebuild a hookah bar/nightclub in Houston, to pay for her plastic surgery (buttock enlargement, facelift, and liposuction of the inner thighs and arms), to buy luxury products, to rent an upscale condominium in downtown Houston, and to treat

herself to new dentures. She has a particular affinity for expensive labels and once spent almost $2,200 on designer lingerie, sunglasses, and accessories in just one day. Additionally, Diallo hid some of the funds by investing in Mali-based companies.

9. Diallo uses an informal value transfer system (IVTS) to move funds to her native country to avoid detection, rather than transferring funds directly through banking institutions.

10. When Diallo began to earn a good living from the nightclub, she abruptly cut all contact with Plaintiff by fabricating a fake hospitalization. Eventually, Plaintiff became aware of the scam.

## III. UNCONTESTED FACTUAL ALLEGATIONS

11. On January 23, 2020, Plaintiff filed a civil lawsuit against Diallo in the United States District Court for the Middle District of Florida.

12. On November 28, 2020, Plaintiff filed his Second Amended Complaint (Exhibit-1)

13. On March 23, 2021, with leave from the Court, Plaintiff filed his Second Motion for Summary Judgment (Exhibit-2).

14. Despite warnings from the Court, Diallo did not respond to the Motion for Summary Judgment, and she did not hire a new attorney.

15. On May 05, 2021, the Honorable William F. Jung ruled on Plaintiff's Motion for Summary Judgment. The Court found that Diallo defrauded Plaintiff (Exhibit-3). The Court directed the Clerk to enter a judgment in favor of Wane for the amount of $325,149.75, jointly and severally (Exhibit-4).

16. On September 20, 2021, the judgment was recorded in Harris County.

17. Diallo has resisted all post-judgment discovery attempts.

18. On August 6, 2021, Plaintiff filed a Motion For Proceeding Supplementary to Execution.

19. On August 26, 2021, the Court entered an order granting Plaintiff's Motion for Proceeding Supplementary to Execution.

20. Despite several demands, Debtor refused to respond to any discovery request in aid of execution. On January 6, 2022, the Court ordered Diallo to respond to the request for production of documents by January 21, 2022.

21. Diallo did not comply with the Court order; on January 27, 2022, Plaintiff filed his Motion to Show Cause.

22. On September 16, 2022, the Court entered an order warning Ms. Diallo that her failure to comply with the Court directives could result in her arrest. The US Marshal was directed to locate Ms. Diallo and serve her with the Court order. Realizing that she is at the end of her rope and could face prison, she filed for bankruptcy.

23. Pursuant to Schedule E/F of Diallo's Petition, she listed Wane as an unsecured creditor with an unsecured claim in the amount of $325,149.75.

24. The judgment amount and interest are due and owing from Diallo to Wane.

25. Diallo has failed to pay Wane pursuant to the Final Judgment.

26. Diallo is liable for the indebtedness pursuant to the Final Judgment.

27. Diallo has failed to pay the debt.

### COUNT I

### NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)(A)

28. Plaintiff restates and incorporates the allegations set forth in paragraphs 1-27 above, as if fully set forth at length.

29. Section 523(a)(2)(A) of the Bankruptcy Code provides, in relevant part, that an individual debtor may not obtain a discharge from any debt —

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

30. Diallo made multiple false representations and committed multiple acts with the intention of deceiving and/or hiding her misdeeds from Plaintiff including, but not limited to:

    A. **Fake Iron Ore Business:** Diallo fraudulently claimed ownership of an iron ore mine that belongs to another company. She falsely claimed that Plaintiff was a partner in exchange for funds. She received multiple payments from the Plaintiff. She falsely claimed that the funds were needed for various purposes related to the iron ore sale.

    B. **Fictitious Port Storage Lease:** Diallo falsely claimed that the business signed a port storage lease. Diallo received several thousand dollars from Plaintiff after falsely claiming that the funds were needed for specific purposes related to a storage lease near the port of Houston.

    C. **Fake Illness:**  In and around August 2017, Diallo falsely claimed that she had a grave illness and urgently needed surgery; she used Plaintiff American Express credit card. In reality, she went to Miami to get plastic surgeries.

    D. **Porsche Cayenne:** Diallo induced Plaintiff to purchase a 2010 Porsche Cayenne. The plan was to resell the car overseas for a profit. Diallo lied about the car being shipped to Mali. In reality she kept the car in Houston for her personal use.

    E. **Fake Homelessness:** Diallo falsely claimed that she was homeless. She asked Plaintiff to give her money for food and hotel stay.

    F. **Fake Pregnancy:** Diallo falsely claimed that she was pregnant with twins and that the Plaintiff was the father. She used this fake pregnancy to ask and receive money from Plaintiff.

    G. **Use of Fake Personas:** Diallo used several fake personas to mislead and defraud Plaintiff. She used a text message application to impersonate an attorney, a federal agent, a secretary and other personas.

WHEREFORE, Wane respectfully requests that the Court (i) declare all liabilities and obligations of Diallo due and owing to Plaintiff pursuant to the Final Judgment, nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code in the amount of at least the

Indebtedness, plus interest, costs of collection, and expenses, incurred after the entry of the Final Judgment; and (ii) grant such other and further relief that is just and proper.

## COUNT II

### NONDISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(6)

31. Plaintiff restates and incorporates the allegations set forth in paragraphs 1-30 above, as if fully set forth at length.

32. Section 523(a)(6) of the Bankruptcy Code provides, in relevant part, that an individual debtor may not obtain a discharge from any debt—

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

33. Diallo willfully and maliciously caused injury to Plaintiff by committing the Wrongful Conduct.

34. Diallo willfully and maliciously committed the Wrongful Conduct with the intent to deceive Plaintiff into funding a fake iron ore export business, buying a car, funding her plastic surgery, believing in her fake pregnancy, all for Diallo's personal benefit.

35. Diallo's Wrongful Conduct was intended to deceive Plaintiff.

36. Diallo's Wrongful Conduct was made so that she would receive capital from Plaintiff, amongst others.

37. Diallo's Wrongful Conduct was wrongful.

38. Diallo knew, or was substantially certain that if her Wrongful Conduct was never discovered by Plaintiff, then she would continue to benefit from such Wrongful Conduct.

39. Plaintiff's injuries as a result of Diallo's actions and/or inactions include, but are not limited to the nonpayment of the Indebtedness, including the Final Judgment and post-judgment interest.

40. Diallo's Wrongful Conduct is the proximate cause of injury to Plaintiff.

41. Diallo has no just cause or excuse for committing the Wrongful Conduct.

42. Diallo knew, or was substantially certain that Plaintiff would be harmed or damaged by her actions.

43. Diallo intended to harm Plaintiff by taking the actions that she took.

44. The obligations of Diallo to Plaintiff are nondischargeable under § 523(a)(6) of the Bankruptcy Code.

45. Plaintiff has no knowledge of the aforementioned willful and malicious acts/conduct until after he has already been damaged and harmed by Diallo.

WHEREFORE, Wane respectfully requests that the Court (i) declare all obligations of Diallo due and owing to Wane, nondischargeable under § 523(a)(6) of the Bankruptcy Code in the amount of at least the Indebtedness or otherwise determined at trial, plus interest, costs of collection, and expenses, incurred after the entry of the Final Judgment; and (ii) grant such other and further relief that is just and proper.

Respectfully submitted, this 22 day of June 2023

/s/Amadou Wane
Amadou Wane
13046 Racetrack Rd. #118
Tampa, FL 33626
(813) 343-0438
wane@wanechester.com

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| | |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| | |

| PARTY (Check One Box Only)<br>□ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor        □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor        □ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

---

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- □ 11-Recovery of money/property - §542 turnover of property
- □ 12-Recovery of money/property - §547 preference
- □ 13-Recovery of money/property - §548 fraudulent transfer
- □ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- □ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- □ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- □ 41-Objection / revocation of discharge – §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- □ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- □ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- □ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- □ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- □ 61-Dischargeability - §523(a)(5), domestic support
- □ 68-Dischargeability - §523(a)(6), willful and malicious injury
- □ 63-Dischargeability - §523(a)(8), student loan
- □ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- □ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- □ 71-Injunctive relief – imposition of stay
- □ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- □ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- □ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- □ 01-Determination of removed claim or cause

**Other**
- □ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- □ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |

**Other Relief Sought**

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

AMADOU WANE
*Plaintiff,*

vs.

SOKONA DIALLO,
LADY MIND HOOKAH,
PIMAP LLC, 1738 Lounge LLC
*Defendants.*

CASE NO: 8:20-cv-00171-WFJ-CPT

Count I: Fraudulent Misrepresentation
Count II: Unjust Enrichment
Count III: Conversion

## SECOND AMENDED COMPLAINT

Plaintiff, AMADOU WANE (hereinafter "Plaintiff" or "WANE"), hereby sues Defendants SOKONA DIALLO, a resident of Houston, Texas ("Defendant" or "DIALLO"), PIMAP LLC ("PIMAP"), a Texas limited liability company, LADY MIND HOOKAH ("LMH"), a bar/nightclub owned by DIALLO, and 1738 Lounge LLC, a Texas limited liability company. In support thereof, Plaintiff states as follows:

## INTRODUCTION

1. This case is about a romance scam in which Sokona Diallo expressed romantic emotions for Plaintiff in order to gain his trust. After gaining Plaintiff trust, she defrauded him out of money in a variety of ways, including proposing a fraudulent business partnership, faking a grave illness, faking a pregnancy, impersonating several individuals including an attorney and a federal agent. For the purpose of executing and attempting to execute the

above described scheme, Diallo made misrepresentations and created fake personas to further her scam. Sokona Diallo is a seasoned conniver who has no qualms abusing the trust of people around her. Her *modus operandi* is to surf dating sites and seek men with relative wealth to defraud with fake business ventures. She spent hundreds of dollars on dating sites such as dating.com and successfulmatch.com to target men in her romance fraud. Successfulmatch.com describes itself as a unique platform that brings successful dating and business together. To further mislead her victims, she uses a call spoofing software to impersonate different people. Unbeknown to Plaintiff, Diallo was romantically involved with other men in Houston. Upon information and belief, Diallo victimized other men in her romance scam. Under her innocent look, lies a conniving liar who is obsessed with money and material possessions. She has no shame using any trick to further her shenanigans.

2. In August 2017, after gaining Plaintiff trust Diallo approached him with a business partnership consisting of exporting iron ore mineral from Mali (West Africa) to the United States and China. In the course of about 2 years, Plaintiff gave her over Three Hundred Thousand Dollars ($300,000) as seed money to start what he thought was a genuine business venture.

3. In an elaborate series of schemes, and misrepresentations, Diallo defrauded Plaintiff. With the money she bought and remodeled a hookah bar/nightclub in Houston, purchased a Ninety Thousand Dollars ($90,000) new Mercedes Benz, bought luxury goods, rented an exclusive apartment in downtown Houston[1], paid for her plastic surgeries (buttock

---

[1] Monthly rents go as high as $12,000

augmentation, facelift, and liposuction of inner thighs and arms ) and treated herself with new dentures. Particularly fond of designer brands, on one occasion, she spent over $2,200 in designer lingerie, sunglasses & accessories in one store alone. Further, Diallo laundered some of the money by investing in businesses in Mali (West Africa).

4. To avoid detection, Diallo uses illicit money exchangers to move funds overseas, generally avoiding transferring the funds directly through banking institutions.

5. Once Diallo started to receive substantial income from the nightclub, she suddenly cut all contacts with Plaintiff by inventing a fake hospitalization and claiming that her phone was broken.

## GENERAL ALLEGATIONS
## THE PARTIES & NON-PARTIES

6. Plaintiff AMADOU WANE is an individual residing in Hillsborough County, Florida.

7. Defendant SOKONA DIALLO, an individual  is, on information and belief, domiciled at 5280 Caroline Street APT 2203, Houston, TX 77004-5887.

8. Defendant PIMAP LLC is a limited liability company organized under the laws of Texas, with SOKONA DIALLO as sole member.

9. Defendant LADY MIND HOOKAH is a bar and nightclub owned by Diallo and located at 9366 Richmond Avenue, Houston, Texas 77063.

10. Defendant 1738 Lounge LLC is a limited liability company organized under the laws of Texas, with SOKONA DIALLO as sole member.

### Reservation to Name Additional Defendants

11. In addition to the entities set forth as Defendants herein, there are likely other parties who may well be liable to Plaintiff, but respecting whom Plaintiff currently lacks specific facts to permit Plaintiff to name such person or persons as a party defendant. By not naming such persons or entities at this time, Plaintiff is not waiving its right to amend this pleading to add such parties, should the facts warrant adding such parties.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and is an action between citizens of different states.

13. This Court has personal jurisdiction over Plaintiff because Plaintiff resides in Hillsborough County, within this jurisdiction.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

14. This is a civil action brought by Plaintiff against Defendants who, acting individually and acting in connection with others, both known and unknown, defrauded Plaintiff of more than Three Hundred Thousand Dollars ($300,000.00) in a romance fraud. Diallo stole Plaintiff's money to  invest in other businesses and buy luxury goods.

15. About 2 years ago Diallo arrived penniless in the United States from Mali. She claimed to have an iron ore mining license from Mali and was looking for partners in extracting and

exporting the iron ore. Plaintiff at first did not show any interest in the partnership. That's when Diallo started to show romantic interest in Plaintiff in order to gain his trust. Diallo is undocumented with a pending immigration deportation order[2] for marriage fraud. She is currently out on bail under ICE[3]'s Intensive Supervision Appearance Program (ISAP).

16. In 2017, On a visit to St. Petersburg, she approached Plaintiff again with the same partnership proposal. As a result of the relationship of trust and confidence that was established between Plaintiff and Diallo, Plaintiff agreed to enter into the partnership and provide seed money to start the business in place.

**Porsche Cayenne**

17. On September 28, 2017, on Diallo's suggestion, Plaintiff purchased a 2010 Porsche Cayenne for $15,700. The plan was to ship the car to Mali to be resold for a profit; however Diallo kept the car in Houston for personal use. On March 29, 2019, Diallo requested and received $1,030 for the transatlantic shipping cost. On April 9, 2019, she requested and received $1,050 for custom fees for the car. It was a fraud; the car never left the United States.


**Fake Illness**

18. In and around August 2017, Diallo told Plaintiff that she has a grave illness and urgently needed surgery. Plaintiff agreed to charge the medical bill on his American Express card and be reimbursed later from the proceeds of the iron ore partnership; however Diallo

---

[2] Deportation order currently on appeal
[3] Immigration and Customs Enforcement

was not ill. Instead, she went to Miami to have plastic surgery.

### Fake Illness of Her Daughter

19. Sokona Diallo will not stop at anything to defraud others. She went as far as using a
    graphic photo of a young child allegedly her daughter, in order to induce Plaintiff to give
    her money.  In July 2017, she claimed that her daughter was sexually abused and needed
    reconstructive surgery. She wanted to send her daughter to Morocco for surgery. On July
    26, 2017, moved by her story, Plaintiff gave Diallo $3,600. On information and belief,
    this was another of the Diallo scams to defraud. She is using the same scam in her asylum
    application.

### Fake Homelessness

20. On November 2, 2018 Diallo told Plaintiff that she lost her apartment and was living in
    the street. She used that scam to ask Plaintiff for money to stay in a hotel.

### Fraudulent Business Expenses

21. On March 29, 2018  Diallo requested Ten Thousand Dollars ($10,000) as legal fee to
    amend PIMAP article of organization and add Plaintiff's as a member of the LLC. She
    received the money but never gave Plaintiff a copy of the amended LLC or any proof that
    the amendment was done. She knew there was no amendment and purposely misled
    Plaintiff. According to the Texas Secretary of State record, Diallo is still the sole member
    of PIMAP.

22. Since the beginning, Diallo refused to give Plaintiff copies of documents concerning the business. After repeated requests, she sent a fake contract non-executed and edited with all identifiable information removed.

23. On March 19, 2018, Plaintiff sent a text message to Diallo to voice his concern on the lack of formal partnership agreement. Plaintiff wanted to ensure that there was no ambiguity as to the partnership. Diallo confirmed to Plaintiff that they were partners and there was no need to worry. With this reassurance, Plaintiff gave Diallo over Seventy-seven Thousand Dollars ($77,000) for two shipments of iron ore to the port of Houston. Despite repeated requests, Diallo has not provided any documents, invoices, receipts concerning the shipments. Diallo did not provide any information as to whom the product was sold to, nor did she provide any accounting of payment received. Based on the contractual monthly shipment of 100,000 metric tons of iron ore, the projected monthly profit of the partnership would have been around $1.2 Million. By her unconscionable, false, misleading, and deceptive acts Diallo has deprived Plaintiff of the profit he could have earned. Further, Plaintiff lost more than Three Hundred Thousand Dollars ($300,000) he contributed to the partnership. Plaintiff requested his funds back from Diallo to no avail.

24. On April 11, 2019, Plaintiff renewed his demand for transparency via the following text message:

```
1) Provide copy of Brazos contract
2) Provide copy of port storage contract
3) Provide copy of sale contract of iron ore
4) Provide copy of mineral insurance from Alliance or
contact person in Mali
5) Provide receipt of Texas sale tax payment
```

## Fictitious Port Storage Lease

25. Diallo lied to Plaintiff about the need to lease a storage near the port of Houston. Plaintiff gave her over Fifty Thousand Dollars ($50,000) for initial deposit and monthly payments for the storage. She knew that no storage contract ever existed. Notwithstanding Plaintiff's insistence on receiving receipts of all transactions, Diallo never complied. She always said "yes", but never delivered. There was never a storage lease. It was Diallo's fabrication: another scheme to steal money from Plaintiff.

## Fake Pregnancy

26. On February 19, 2019, Diallo sent Plaintiff the picture of a pregnancy test device marked positive. She falsely claimed that she was pregnant with twins and that Plaintiff was the father. For several months she used the fake pregnancy to mislead Plaintiff into giving her money for medicine and medical treatments.

27. On several occasions, Diallo sent pictures of her blood soaked underwear, claiming that she is loosing blood and was about to have a miscarriage. She urged Plaintiff to send money urgently for medical treatment.

## Fake Persona: The Immigration Attorney

28. On August 10, 2017, Diallo impersonated an Atlanta attorney named Kell Enow. She used the phone number (346) 706-3274 to send text messages to Plaintiff. The fake attorney persona stated that Diallo was in immigration custody and urgently needed

$4,000 for bail and $800 for attorney fees. Plaintiff sent the money thinking that the story was true.

29. Two days later, on August 12, 2017, the fake attorney sent more text messages to Plaintiff claiming that Diallo's mining project is a good project and that she put Plaintiff's name on all the documents and contracts. Diallo's goal was to induce Plaintiff in believing that the mining project was legitimate. The exchange was in French, the following texts are a correct translation:

```
Fictitious Attorney: I am going to tell you a secret. She
put your name on all the documents of her mining contract.
My friend is her attorney for that. I put them in contact,
but he is Nigerian and has become greedy. He wants to
invest in her project and be her partner. But I did not
want to tell that to Sokona; he is her attorney. I don't
know the kind of relationship they have. You need to watch
her and don't let anyone get on the deal. It is a big
project, so watch her closely. Let's keep this conversation
between us; I am telling you that because we're Africans
and I want the best for her.
```

30. In reality, Diallo never had a mining license from the government of Mali; she used a mine belonging to another company to further her scam.

## Impersonating a Federal Agent

31. On January 5, 2019, Diallo was scheduled to travel to Tampa to meet Plaintiff so that they could discuss the terms of the partnership and put it in writing. However, she had no intention to come to Tampa; instead she impersonated an immigration agent. She sent a screenshot of text messages of a purported immigration agent prohibiting her from

traveling.

### Fake Persona: Christelle, The Friend

32. Diallo used another fake persona named Christelle to mislead Plaintiff. Christelle

contacted Plaintiff via text messages with the spoofed phone number (281) 624-2613.

She claimed that Diallo was hospitalized and needed money for medicine. On July 15,

2019 she sent a text message stating that Diallo asked for $400 for the port storage lease

payment.

### Fake Iron Ore Sale

33. November 29, 2018, Diallo informed Plaintiff that a shipment of iron ore was sold for

$34,500 and that we will be paid by check. For months, Diallo misled Plaintiff; there was

no sale and no check. On March 10, 2019, Diallo requested and received $2,653 to pay

state tax on the alleged iron ore sale.

### Fake Persona: Katie, The Secretary

34. To further mislead Plaintiff, Diallo created a fictitious person named Katie, Secretary of a

company that bought the iron ore. Diallo used a cell phone number (832) 378-9813 to

impersonate Katie. Diallo misled Plaintiff via this fake persona. On one occasion Katie

claimed that their office building caught fire, another time she would say that the check

for $34,500 for the proceeds of the sale was mailed but came back. The deception went

on for several months. Diallo used Katie to get more money from Plaintiff.

## Fake Persona: John Sorge, The General Manager

35. Diallo continued to defraud and misled Plaintiff by inventing yet another fictitious person named John Sorge who worked in a fictitious company named Brazos Santiago Mining. She used the cell phone number (281) 862-8588 for that scheme. In the evening of September 13, 2018, Sorge contacted Plaintiff via a text message.

> Sorge: Hello Mr Wane I am John Sorge the General
> Manager of Santiago and landscapes Mining.When it's
> the best time tomorrow to text you so we can discuss
> little since you are the new owner of PIMAP
> Thank you and sorry for the time of the message

36. Sorge asked Plaintiff to fill out a loan application from Johnson Advisory Group Inc. in the amount of TWO MILLION DOLLARS.

> Sorge: We contact our big client so we will send you
> an application now fill up and send back to me now so
> they can process 2M for us your company and mine so
> we can start to work on the deal has agree

37. According to Sorge, Plaintiff's loan application was approved.

> Sorge: Congratulations you have been approved

38. On June 2, 2019, Plaintiff sent a notarized letter authorizing Diallo to receive the loan checks and mail them to him via Fedex.

## Fake Hospitalization

39. Starting early August 2019, Diallo stopped all contact with Plaintiff. She did not respond to Plaintiff repeated calls or emails. For weeks, Plaintiff looked for Diallo. Plaintiff contacted her friends and family without success. With the help of several fake personas,

Diallo concocted a fake hospital stay in Miami.

## Fake Person: The Jamaican

40. Diallo created the fake persona of a Jamaican truck driver. From August 2019, to January 2020, the Jamaican texted Plaintiff from a Miami phone number: (305) 340-0994. He claimed that Diallo was pregnant and seriously ill and could not talk; he stated that he drove her to the hospital. However, the Jamaican was never able to provide the name of the hospital where Diallo was purportedly staying.

41. Early January 2020, Plaintiff sent an email to Diallo threatening legal action if she doesn't come clean. Few minutes later, Diallo contacted Plaintiff via a new phone number. She insisted on her fake pregnancy and hospital stay. However, she could not provide the name of the hospital where she was purportedly staying.

42. On September 9, 2019, the Jamaican requested and received $200 for the bus ticket he said he paid for Diallo. On November 29, 2019, the Jamaican requested and received $250 for ambulance fee to transport Diallo to another hospital.

## Fake Persona: The Hospital Nurse

43. In aid of her fake hospitalization story, Diallo created another fake persona: a hospital nurse; she used the number (305) 340-0098. With that persona she misled Plaintiff into believing that she was indeed pregnant and hospitalized in Miami.

44. On January 11, 2019, Plaintiff contacted Bank of America, and was informed that his name has been removed from PIMAP business account. It became clear that Diallo stole

money from Plaintiff to finance the acquisition of LMH nightclub in Houston and to support her lavish lifestyle.

45. To enforce its rights, Plaintiff may retain a counsel and will be obligated to pay counsel a reasonable fee for his services, for which Defendants are liable as a result of their bad faith and otherwise.

## FIRST CAUSE OF ACTION

### (Against all Defendants)

### FRAUDULENT MISREPRESENTATION

46. Plaintiff realleges, and adopts by reference herein, Paragraphs 1-45 above, and further alleges:

47. Diallo intentionally and fraudulently misrepresented facts about the partnership, the existence of a storage lease, her pregnancy, the sale of iron ore amongst other things.

48. In particular, Diallo intentionally and fraudulently:

    a. Invented a grave illness in order to obtain money for her plastic surgery;

    b. Invented an illness of her daughter in order obtain money from Plaintiff;

    c. Claimed that she was homeless;

    d. Invented business expenses;

    e. Claimed the existence of a port storage lease;

    f. Misrepresented a pregnancy with twins;

    g. Impersonated a federal agent;

     h.   Impersonated an immigration attorney;

     i.   Impersonated a fake friend: Christelle;

     j.   Impersonated the General Manager of a fictitious company;

     k.   Impersonated a Jamaican man;

     l.   Impersonated a nurse;

     m.   Misrepresented a $34,500 sale of iron ore;

     n.   Misrepresented the payment of Texas sale tax;

     o.   Induced Plaintiff to purchase the Porsche Cayenne;

     p.   Led Plaintiff to believe that his name was on PIMAP contracts;

     q.   Misrepresented her hospitalization in Miami for several months;

49. The representations were made by Diallo with the intent that Plaintiff relies upon them, in willful, wanton, and reckless disregard for the lack of truthfulness of the representations and with the intent to defraud and deceive Plaintiff.

50. Plaintiff reasonably relied on the fraudulent misrepresentations as communicated to him directly from Defendant and via fake personas controlled by Defendant.

51. Plaintiff suffered damages due to his reliance on Diallo's misrepresentations.

52. As a proximate result of the conduct of Defendants Diallo, PIMAP, Lady Mind Hookah, and 1738 Lounge as alleged herein, Plaintiff was damaged in an amount in excess of Ten Million Dollars, the exact amount of which will be proven at time of trial.

53. The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise causing injury, and was a despicable conduct that subjected Plaintiff to cruel and unjust

hardship in conscious disregard of his rights, and was performed with fraud, oppression or malice so as to justify an award of exemplary or punitive damages against such Defendants in an amount according to proof at trial.

## SECOND CAUSE OF ACTION

### (Against all Defendants)

### UNJUST ENRICHMENT

54. Plaintiff realleges, and adopts by reference herein, Paragraphs 1-45 above, and further alleges:

55. At all times relevant, a benefit was conferred upon the Defendant Diallo, the receipt of the funds.

56. At all times material, the Defendant Diallo either requested benefit or knowingly and voluntarily accepted it.

57. Under the circumstances, it would be inequitable for the Defendant to retain the benefit of the funds without paying value.

58. As a proximate result of the conduct of Defendants as alleged herein, Plaintiff was damaged in an amount in excess of Ten Million Dollars, the exact amount of which will be proven at time of trial. When Plaintiff has ascertained the full amount of its damages, it will seek leave of Court to amend this Complaint accordingly.

59. The conduct of Defendant as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise causing injury, and was a despicable conduct that subjected Plaintiff to cruel and unjust

hardship in conscious disregard of his rights, and was performed with fraud, oppression or malice so as to justify an award of exemplary or punitive damages against such Defendants in an amount according to proof at trial.

## THIRD CAUSE OF ACTION

### (Against all Defendants)

### CONVERSION

60. Plaintiff realleges, and adopts by reference herein, Paragraphs 1-45 above, and further alleges:

61. At all times relevant to this litigation, Diallo was informed that she must return the funds received from Plaintiff.

62. Plaintiff demanded that his funds be returned when he became aware of Diallo shenanigans.

63. Diallo has not returned the funds.

64. As a proximate result of the conduct of Defendant as alleged herein, Plaintiff was damaged in an amount in excess of Ten Million Dollars, the exact amount of which will be proven at time of trial. When Plaintiff has ascertained the full amount of its damages, it will seek leave of Court to amend this Complaint accordingly.

65. The conduct of Defendant as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of property or legal rights or otherwise causing injury, and was a despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights, and was performed with fraud, oppression

or malice so as to justify an award of exemplary or punitive damages against such

Defendants in an amount according to proof at trial.

## PLAINTIFF'S DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

## RESERVATION OF RIGHTS

Plaintiff reserves its right to further amend this Complaint, upon completion of his investigation

and discovery, to assert any additional claims for relief against Defendants or other parties as

may be warranted under the circumstances and as allowed by law.

Respectfully submitted, this 28 day of November 2020

/s/Amadou Wane
Amadou Wane
13046 Racetrack Rd. #118
Tampa, FL 33626
(813) 343-0438
amadou.wane@pimapllc.com

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AMADOU WANE
*Plaintiff,*

vs.

SOKONA DIALLO
LADY MIND HOOKAH
PIMAP LLC,
1738 LOUNGE LLC
*Defendants.*

CASE NO: 8:20-cv-00171-WFJ-CPT

**PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT PURSUANT
TO FED. R. CIV. P. 56**

**COMES NOW** Plaintiff, AMADOU WANE, and pursuant to Fed. R. Civ. P. 56 moves the Court for an Order entering judgment in his favor against Defendants Sokona Diallo, Sokona Diallo *dba* Lady Mind Hookah, PIMAP LLC, and 1738 Lounge LLC for the sum of $14,894,021.64[1] and punitive damages on the claims in the Amended Complaint (Doc. 84). In further support thereof states the following:

## INTRODUCTION

This case is about a romance scam in which Sokona Diallo expressed romantic emotions for Plaintiff in order to gain his trust. After gaining Plaintiff trust, she defrauded him out of money in a variety of ways, including proposing a fraudulent business partnership, faking a grave illness, faking a pregnancy, impersonating several individuals including an attorney and a federal agent. For the foregoing reasons, Plaintiff brought this action against Defendants, Sokona Diallo ("Diallo), Sokona Diallo *d/b/a* Lady Mind Hookah, PIMAP LLC, and 1738 Lounge LLC. In August 2017, Diallo approached Plaintiff with a partnership proposal which consists of

---

[1] *Wane's Affidavit* at ¶ 10.

exporting iron ore minerals from Mali (West Africa) to the United States and China; unbeknown to Plaintiff, the partnership was a scam. After giving $325,149.75[2] to Diallo, Plaintiff later discovered that it was all part of a fraudulent scheme designed by Diallo. With the ill gotten gains, she acquired a hookah bar/nightclub in Houston, purchased a new Ninety Thousand Dollars ($90,000) Mercedes Benz, bought luxury goods,, paid for her plastic surgeries[3] (Brezilian butt lift included), treated herself with new dental implants, and rented an exclusive apartment[4] in downtown Houston where monthly rent goes has high as $12,000[5]. In her deposition[6], she was evasive and not forthcoming; she used the phrase "I don't recall" 52 times and "I don't remember" 59 times. Her financial record shows that she used Plaintiff money to enrich herself.

The undisputed facts show that Plaintiff is entitled to summary judgment on the claims alleged in the Second Amended Complaint (Doc. 111).

## JURISDICTION

1. Plaintiff Amadou Wane is a resident of Hillsborough County, Florida. *Wane's Affidavit* at ¶ 3.

2. Sokona Diallo is a resident of Texas. (Doc. 114 at ¶ 7).

3. Defendant PIMAP LLC is a limited liability company organized under the laws of Texas, with SOKONA DIALLO as sole member. (Doc. 114 at ¶ 8).

4. Lady Mind Hookah is a Texas D/B/A owned by Sokona Diallo located at 9366 Richmond Avenue, Houston, Texas 77063. *Wane's Affidavit* at ¶ 5.

---

[2] *Id*

[3] She used Plaintiff's American Express card to charge $8,748 for plastic surgery. *Wane's Affidavit* at ¶ 20.

[4] Diallo's Depo. p. 5.

[5] https://www.thesouthmore.com/

[6] The deposition lasted less than 3 hours.

2

5. Defendant 1738 Lounge LLC is a limited liability company organized under the laws of Texas, with SOKONA DIALLO as sole member. (Doc. 114 at ¶ 10).

6. The amount in controversy exceeds $75,000.00. *Wane's Affidavit* at ¶ 6.

## CLAIMS AGAINST ALL DEFENDANTS UPON WHICH JUDGMENT IS SOUGHT

### A. Count I: Fraudulent Misrepresentation

1. **Burden of Proof and Elements**: In the state of Florida, relief for a fraudulent misrepresentation may be granted only when the following elements are present: (i) a false statement concerning a material fact; (ii) the representor's knowledge that the representation is false; (iii) an intention that the representation induce another to act on it; and, (iv) consequent injury by the party acting in reliance on the representation. *Johnson v. Davis*, 480 So.2d 625, 627 (Fla.1985). The Plaintiff has the burden of proof. *Johnson, id.* Defendants plead no affirmative defense. *Defendants' Answer to Amended Complaint*. Dkt. 89.

2. **Elements That Can Be Proven by Plaintiff**

   Element 1: Diallo made several false statements.

   #### Fake Iron Ore Business

   A. Diallo falsely claimed that a shipment of iron ore was sold for $34,500 and that the check was on its way. *Wane's Affidavit* at ¶ 7.

   B. Plaintiff requested full accounting and return of his money when he became suspicious. Plaintiff also requested copies of all the partnership business records. *Wane's Affidavit* at ¶ 9.

   C. On March 29, 2018, Diallo received $10,000 when she falsely claimed that the fund was needed to amend the LLC. *Wane's Affidavit* at ¶ 10.

   D. On April 20, 2018, Diallo received $6,700 when she falsely claimed it was needed to amend the iron ore sale contract. *Wane's Affidavit* at ¶ 11.

E. On March 10, 2019, Diallo received $2,653 when she falsely claimed it was needed to pay the tax on the iron ore sale. *Wane's Affidavit* at ¶ 12.

F. Diallo fraudulently claimed ownership of an iron ore mine that belongs to another company. Exh. 8, *Wane's Affidavit* at ¶ 13.

G. Plaintiff reported on Schedule C of his tax returns the money he gave Diallo for the iron ore business. *Wane's Affidavit* at ¶¶ 14-15.

### Fictitious Port Storage Lease

H. On March 20, 2018 Diallo received $10,000 after falsely claiming that the money is needed as downpayment for a storage lease near the port of Houston. *Wane's Affidavit* at ¶ 18.

I. On April 23, 2018, Diallo received $3,500 after falsely claiming that the money is needed to amend the storage contract. *Wane's Affidavit* at ¶ 19.

### Fake Illness

J. In and around August 2017, Diallo falsely claimed that she had a grave illness and urgently needed surgery; Plaintiff let her use his American Express credit card. In reality, she went to Miami to get plastic surgeries. *Wane's Affidavit* at ¶ 20.

### Porsche Cayenne

K. On September 28, 2017, induced Plaintiff to purchase a 2010 Porsche Cayenne for $15,700. Exh. 18. The plan was to resell the car overseas for a profit. Diallo lied about the car being shipped to Mali. *Diallo's Depo.* p. 17 ln. 8-12. Exh. 5, p. 5. She admitted that she can't provide any proof that the car was shipped overseas. *Diallo's Depo.*, p. 16, ln. 2-5. Texas vehicle emission test record shows that in May 2020, the car passed an emission test conducted in Houston. *Wane's Affidavit* at ¶ 21.

4

## Fake Homelessness

L. Diallo falsely claimed that she was homeless and asked Plaintiff to give her money for food and hotel stay. *Wane's Affidavit* at ¶ 22. However, her bank record shows that she made regular rent payments for her apartment in November 2018 (Exh. 11, p. BOA-170), in October 2018 (Exh. 11, p. BOA-168), in September 2018 (Exh. 11, p. BOA-166), in August 2018 (Exh. 11, p. BOA-165), and in July 2018 (Exh. 11, p. BOA-164).

## Fake Pregnancy

M. Diallo falsely claimed that she was pregnant with twins and that Plaintiff was the father. Diallo used the fake pregnancy to get money from Plaintiff. *Wane's Affidavit* at ¶ 23.

## Use of Fake Personas

N. Diallo used several fake personas to mislead and defraud Plaintiff. On August 10, 2017 she impersonated an attorney from Atlanta. *Wane's Affidavit* at ¶ 24.

O. On January 5, 2019, Diallo impersonated a federal immigration agent. *Wane's Affidavit* at ¶ 25.

P. On January 29, 2019, Diallo impersonated a fictitious person named Demola. Via text messages, Demola falsely claimed that Diallo was in jail and needed bail money. *Wane's Affidavit* at ¶ 26.

Q. On March 14, 2019, Diallo impersonated an employee of the Texas Comptroller office. *Wane's Affidavit* at ¶ 27.

R. On September 13, 2018, Diallo impersonated John Sorge, a General Manager of a fictitious mining company. *Wane's Affidavit* at ¶ 28.

S. On December 27, 2018, Diallo impersonated Katie, a secretary for a fictitious company. *Wane's Affidavit* at ¶ 30.

T. On June 25, 2019, Diallo impersonated Kristelle, a fictitious friend, to ask Plaintiff for money. *Wane's Affidavit* at ¶ 31.

U. From August 19, 2019 to January 2020, Diallo impersonated a Jamaican man in order to perpetuate her fake pregnancy and hospital stay. *Wane's Affidavit* at ¶ 32.

V. On August 30, 2019, Diallo impersonated a nurse in order to perpetuate her fake pregnancy and hospital stay. *Wane's Affidavit* at ¶ 33.

### Romance Scam

W. Diallo defrauded Plaintiff with her romance scam scheme. *Wane's Affidavit* at ¶¶ 34-35.

X. Diallo lied about her marital status. During her deposition, she claimed that she was not married. *Diallo's Depo.*, p. 7, ln. 14-15. However, Harris county marriage record shows that she is indeed married. Exh. 40.

Y. Diallo spent a considerable amount of money on many dating sites' subscriptions. Exh. 11 p. BOA-10[7]. She also uses background check services such as Spokeo on a regular basis. Exh. 11 at BOA-17, BOA-25.

Element 2: Diallo knew that she was making false statements to Plaintiff.

Z. In her deposition, Diallo admitted that she never sold anything and that there is no iron ore sale contract. *Diallo's Deposition*[8], p. 63, ln. 1-9.

AA. Plaintiff repeatedly asked Diallo for a copy of the iron ore sale contract; she always replied that she will give it later. *Wane's Affidavit* at ¶ 16. She finally admitted that there was no sale contract. *Diallo's Depo*. p. 63. She knew or should have known that she was making a false statement to Plaintiff.

---

[7] On October 12, 2017.
[8] Exhibit 1

BB.   Diallo admitted that there was no article of organization to amend. *Diallo's Depo.* pp. 71-72. She knew or should have known that her statement to Plaintiff was false.

CC.   Diallo didn't pay anything to amend a port storage contract; she was never able to provide proof of the existence of a port storage contract. *Diallo's Depo.* p. 73 ln. 12-16. She knew or should have known that her statement to Plaintiff was false.

Element 3: Diallo made several false statements in order to mislead Plaintiff into giving her money.

A.   Diallo wanted Plaintiff to believe that the iron ore export business was a genuine business venture.

B.   Each time Plaintiff voiced his doubts about the partnership, Diallo insisted that she was telling the truth. *Wane's Affidavit.* at ¶ 16.

C.   She used her fake pregnancy, fake homelessness, fake illness amongst other schemes to induce Plaintiff into giving her money. *Wane's Affidavit.*

Element 4: Plaintiff lost money due to Diallo misrepresentations.

A.   Plaintiff gave $325,149.75 to Diallo in the course of several months and did not receive anything in return. *Wane's Affidavit* at ¶ 10.

B.   Had Diallo not breached the contract, Plaintiff could have made a profit of $14,894,021.64 the first year. *Wane's Affidavit* at ¶ 10.

## B. Count II: Unjust Enrichment

1. **Burden of Proof and Elements**: There are three elements for an unjust enrichment claim under Florida law: (i) plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (ii) defendant accepts and retains the conferred benefit; and (iii) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it. *Fito v. Attorney's Title*

*Ins. Fund, Inc.*, 83 So. 3d 755, 758 (Fla. Dist. Ct. App. 2011) (citing *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672 (Fla. Dist. Ct. App. 2000)). Plaintiff has the burden of proof. *Fito, id.* Defendants plead no affirmative defense. *Defendants' Answer to Amended Complaint*. Doc. 89.

2. **Elements That Can Be Proven by Plaintiff**

Element 1: Diallo received several thousands of dollars from Plaintiff.

   A. In the course of about two years, Plaintiff gave Diallo $325,149.7. *Wane's Affidavit* at ¶ 10.

   B. All the deposits made into Diallo's Regions bank account were made by Plaintiff. Exh. 10. *Wane's Affidavit* at ¶ 17; Exh. 10.

   C. Plaintiff also deposited money into Diallo's Bank of America accounts. Exh. 11.

Element 2: Diallo used Plaintiff money for her own enjoyment.

   A. Diallo used Plaintiff money for her plastic surgery. *Wane's Affidavit* at ¶ 20; Exh. 11 at BOA-05.

   B. Diallo used Plaintiff money to buy a brand new Mercedes. *Wane's Affidavit* at ¶ 35. *Diallo's Depo.* pp. 9-10.

   C. She used Plaintiff money for the down payment on the commercial lease[9] for the nightclub. Exh. 11 at BOA-62, BOA-97, BOA-175-176.

   D. Diallo used Plaintiff money to acquire the nightclub Lady Mind Hookah. *Wane's Affidavit* at ¶ 5.

Element 3: It would be unfair for Diallo to keep Plaintiff's money.

   A. Diallo used Plaintiff money to enrich herself and finance her lavish lifestyle. Exh. 10; Exh. 11. It would be unfair for her to retain the money she is not entitled to.

---

[9] The lessor is Richmond Retail LLC.

### C. Count II: Conversion

1. **Burden of Proof and Elements**: Before a conversion can occur, a party that was previously in rightful possession of another party's funds must be informed by the other party that: (i) continued possession of the funds is no longer permitted; (ii) a demand for return of the funds is necessary; and (iii) the party holding the funds must fail to comply with the demand. *Black Bus. Inv. Fund of Cent. Fla., Inc. v. Fla. Dep't of Econ. Opportunity*, 178 So. 3d 931, 937 (Fla. 1st DCA 2015). Plaintiff has the burden of proof. *Black, Id.* Defendants plead no affirmative defense. *Defendants' Answer to Amended Complaint*. Doc. 89.

2. **Elements That Can Be Proven by Plaintiff**

Element 1: Diallo was informed that she can't keep Plaintiff money.

   A. When Plaintiff discovered that the partnership was a sham, he informed Diallo that she can't keep the funds she received. *Wane's Affidavit* at ¶ 16.

Element 2: Diallo was informed to return Plaintiff's money.

   A. Plaintiff asked Diallo to pay back the money she received from him. *Id.* at ¶ 16.

Element 3: Diallo refused to pay back the money.

   A. Diallo made it clear she has no intention to return the money. *Id.* at ¶ 16.

### CONCLUSION

Plaintiff's evidence, viewed in the light most favorable to him, is sufficient to establish all of the elements of his claims. Further, Defendants plead no affirmative defense. Therefore, Plaintiff is entitled to summary judgment on all the claims.

**WHEREFORE**, Plaintiff, Amadou Wane, respectfully requests this Honorable Court to grant his Motion for Summary Judgment, declare the judgment nondischargeable in Bankruptcy and for any further relief this Court deems just and proper.

Respectfully submitted, this 23 day of March 2021

/s/Amadou Wane
Amadou Wane
13046 Racetrack Rd. #118
Tampa, FL 33626
(813) 343-0438
amadou.wane@pimapllc.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date  served the foregoing to Defendants at 5280 Caroline Street Apt 2203 Houston TX 77004-5887.

/s/Amadou Wane
Amadou Wane
13046 Racetrack Rd. #118
Tampa, FL 33626
(813) 343-0438
amadou.wane@pimapllc.com

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA – TAMPA DIVISION


AMADOU WANE,  Plaintiff


v.                                    No: 8:20-cv-T-00171-02-CPT

SOKONO DIALLO,
LADY MIND HOOKAH,
PIMAP LLC, 1738 Lounge LLC.,
                    Defendants
_____/


### ORDER ON RENEWED MOTION FOR SUMMARY JUDGMENT


This matter came before the Court upon Mr. Wane's renewed motion for

summary judgment.  Doc. 125.  The Court has reviewed this pro se plaintiff's

moving papers and filings accompanying the motion.  No defendant responded to

the motion, although the Court warned defendants that failure to respond to

motions deem them unopposed under the local rules.  Doc. 127.  The individual

defendant Ms. Diallo was defending herself without counsel, as her attorney (with

no replacement) had departed the case earlier with leave of court.  Ms. Diallo

appears to have abandoned the case.  The most recent mailing sent to her by the

Clerk was returned as "unable to forward, no change of address filed."   Diallo

apparently has not updated her address on this case or sought to participate further. The Court grants the motion for summary judgment in part and denies it in part.

## **BACKGROUND OF THE CASE:**

The second amended complaint (Doc. 111) states that Ms. Diallo ran a romantic scam on the plaintiff, and defrauded him in various ways, including through personal favors, assertions of false business partnerships, dishonest solicitation of gifts, a faked pregnancy, fake illnesses and false homelessness, and impersonating several people including an attorney and a federal agent. Regrettably, plaintiff fell for this scam for a while and defendants fleeced him for a large amount of money. The Court will not repeat the highly sophisticated and lamentable scams that Ms. Diallo is alleged in the second amended complaint to have pulled on Mr. Wane. Doc. 111 at ¶¶ 3- 44. The second amended complaint seeks recovery under three causes of action against defendants: fraudulent misrepresentation (Count One); unjust enrichment (Count Two); and conversion (Count Three).

While still represented by counsel, Ms. Diallo, Lady Mind Hookah, and Primap LLC answered the second amended complaint. They asserted a general denial as to all actionable facts. Doc. 114. Primap LLC then lost its lawyer when defense counsel resigned and was not replaced. Because Primap did not proceed with a lawyer as required by any litigating corporate entity, the Court defaulted it after

warning. Docs. 116, 122. 1738 Lounge LLC never answered and has been defaulted. Docs. 124, 128. Lady Mind Hookah is an unincorporated proprietorship of Diallo, and thus is not sui juris. Any debt it may have or incur is that of its owner and principal Diallo.

In the present summary judgment motion, plaintiff asserts he paid $325,149.75 in hard money to Diallo. This included Diallo charging $8748.00 to plaintiff's credit card for plastic surgery. In her deposition, Diallo was, continually and improperly, very evasive as to these matters. Doc. 125-1. The basis for plaintiff Wane's motion is found in his well-documented affidavit at Doc. 125-7 (and extensive exhibits). The allegations in the motion and in his affidavit are uncontested.

Upon review of the uncontested motion for summary judgment, and all the filings in support thereof, the Court concludes that the most apt remedy for this romantic scam is unjust enrichment, Count II. Diallo, using her own wiles and with the alter ego defendant entities, unjustly enriched herself at the expense of the plaintiff to the tune of $325,149.75. The other Counts are duplicative and not entirely apt. Accordingly, the Court will instruct the Clerk to enter judgment on Count II, jointly and severally, against all defendants in that amount, to bear post-judgment interest. The Clerk will thereafter close this file.

DONE AND ORDERED, this 5th day of May, 2021.

*/S/ William F. Jung*
William F. Jung
United States District Court

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

*p. 2*

AMADOU WANE,                    **2021   60622**

       Plaintiff,

v.                                                      Case No:  8:20-cv-171-WFJ-CPT

SOKONA DIALLO, PIMAP LLC,                    *129th*
Texas Limited Liability Company,
LADY MIND HOOKAH,                    **FILED**
Bar/Nightclub, and 1738 LOUNGE                    Marilyn Burgess
LLC,                                        District Clerk

       Defendants.                    OCT 0 4 2021

Time:_____
                          Harris County, Texas
By_____
                             Deputy

## JUDGMENT IN A CIVIL CASE

**IT IS ORDERED AND ADJUDGED** that judgment is entered on Count II, against

Sokona Diallo, PIMAP LLC, and 1738 Lounge LLC in the favor of Plaintiff, in the joint

and several amount of $325,149.75 to bear post-judgment interest.

                ELIZABETH M. WARREN,
                CLERK

                s/B. Sohn, Deputy Clerk

RECORDER'S MEMORANDUM
This Instrument is of poor quality
at the time of imaging

I CERTIFY THE FOREGOING TO BE A TRUE
AND CORRECT COPY OF THE ORIGINAL
CLERK OF COURT
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
BY: _____
DEPUTY CLERK

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders**: Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. Section 1291**: Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C. Section 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. V. Mestre, 701 F.2d 1365, 1368 (11th Cir. 1983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. Section 636(c).

    (b)  **In cases involving multiple parties or multiple claims**, a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b), Williams v. Bishop, 732 F.2d 885, 885-86 (11th Cir. 1984). A judgment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 201, 108 S. Ct. 1717, 1721-22, 100 L.Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. Section 1292(a)**: Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions..." and from "[i]nterlocutory decrees...determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. Section 1292(b) and Fed.R.App.P.5**: The certification specified in 28 U.S.C. Section 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule**: Limited exceptions are discussed in cases including, but not limited to: Cohen V. Beneficial Indus. Loan Corp., 337 U.S. 541,546,69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F. 2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S. Ct. 308, 312, 13 L.Ed.2d 199 (1964).

2.  **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P.4(a) and (c) set the following time limits:

    (a)  **Fed.R.App.P. 4(a)(1)**: A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD** - no additional days are provided for mailing. Special filing provisions for inmates are discussed below.

    (b)  **Fed.R.App.P. 4(a)(3)**: "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

    (c)  **Fed.R.App.P.4(a)(4)**: If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

    (d)  **Fed.R.App.P.4(a)(5) and 4(a)(6)**: Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

    (e)  **Fed.R.App.P.4(c)**: If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. Section 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.  **Format of the notice of appeal**: Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.  **Effect of a notice of appeal**: A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).

Certified Document Number: 98218437 - Page 2 of 2



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   October 4, 2021

Certified Document Number:        98218437 Total Pages:  2

*Marilyn Burgess*

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com

B2500A (Form 2500A) (12/15)

# United States Bankruptcy Court

_____District Of _____

In re _____,   )   Case No. _____
　　　　　Debtor　　　　　　　　　)
　　　　　　　　　　　　　　　　　)   Chapter _____
　　　　　　　　　　　　　　　　　)
_____　　　　　)
　　　　　Plaintiff　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　)   Adv. Proc. No. _____
　　　　　　　　　　　　　　　　　)
_____　　　　　)
　　　　　Defendant　　　　　　　　)

## SUMMONS IN AN ADVERSARY PROCEEDING

YOU ARE SUMMONED and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons, except that the United States and its offices and agencies shall file a motion or answer to the complaint within 35 days.

　　　　　Address of the clerk:

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

　　　　　Name and Address of Plaintiff's Attorney:

If you make a motion, your time to answer is governed by Fed. R. Bankr. P. 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

_____ (Clerk of the Bankruptcy Court)

Date: _____   By: _____ (Deputy Clerk)

B2500A (Form 2500A) (12/15)

## CERTIFICATE OF SERVICE

I, _____(name), certify that service of this summons and a copy of the complaint was made _____(date) by:

❑    Mail service: Regular, first class United States mail, postage fully pre-paid, addressed to:

❑    Personal Service: By leaving the process with the defendant or with an officer or agent of defendant at:

❑    Residence Service: By leaving the process with the following adult at:

❑    Certified Mail Service on an Insured Depository Institution: By sending the process by certified mail addressed to the following officer of the defendant at:

❑    Publication: The defendant was served as follows: [Describe briefly]

❑    State Law: The defendant was served pursuant to the laws of the State of _____, as follows: [Describe briefly]

If service was made by personal service, by residence service, or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

Under penalty of perjury, I declare that the foregoing is true and correct.

Date _____   Signature _____

       Print Name: _____

       Business Address: _____

                 _____